

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**SHANE NELSON**                                                **PLAINTIFF**

**VERSUS**                    CIVIL ACTION NO. L12CV24 H50-RHW

**SANTANDER CONSUMER USA, INC.;**
**RENOVO SERVICES, LLC; JOHN DOES 1-10;**
**and JANE DOES 1-10**                              **DEFENDANTS**

<u>**COMPLAINT**</u>
**(Jury Trial Demanded)**

COMES NOW PLAINTIFF, SHANE NELSON, (hereinafter referred to as "Plaintiff"),

through undersigned counsel, and in support of this Complaint alleges the following:

<u>**PARTIES, JURISDICTION AND VENUE**</u>

1.     This is a lawsuit for compensatory and statutory damages, treble damages, punitive

        damages, costs and attorney fees.   The lawsuit involves bad faith breach of contract;

        wrongful repossession of Plaintiff's vehicle; violations of the Fair Debt Collection

        Practices Act, 15 U.S.C. §1592; and the Telephone Consumer Protection Act, 47 U.S.C.

        §227; and other state law and federal law violations.

2.     The wrongful acts of the Defendants occurred in whole or part in Pearl River County,

        Mississippi.

3.     Plaintiff, Shane Nelson, is an adult resident citizen of Pearl River County, Mississippi,

        who can be served with process through undersigned counsel.

4.     Defendant, Santander Consumer USA, Inc., is a national automobile finance company

        and debt collector, incorporated in Illinois and based in Texas, (hereinafter referred to as

        "Santander").  Santander is registered to do business in Mississippi, and can be served

        through its agent, CT Corporation System, 645 Lakeland East Drive, Ste. 101, Flowood,

MS 39232.

5.      Defendant, Renovo Services, LLC, is a national automobile repossession company and debt collector, incorporated in Delaware and based in Illinois, (hereinafter referred to as "Renovo").  On information and belief, Renovo is a subsidiary or sister company of Renaissance Recovery Solutions, LLC.  Renovo is registered to do business in Mississippi, and can be served through its agent, CT Corporation System, 645 Lakeland East Drive, Ste. 101, Flowood, MS 39232.

6.      Defendants, JOHN and JANE DOES 1-10 are individuals or entities, whose identities are currently unknown to the Plaintiffs, but whose identities may be known to other Defendants or will be discovered during the course of litigation.  These individuals or entities, though unknown at this time to the Plaintiff, are aware or will become aware through the filing of this lawsuit that their actions or inactions are alleged by the Plaintiff to have been improper and to have caused damages.  These unknown entities are affiliates, co-actors, agents, predecessors in interest, assignees, or others who caused harm to the Plaintiff.  These unknown defendants may include, without limitation, financiers, tow-truck operators, banks, automobile dealerships or others.  This Complaint will be amended with the names of these unknown defendants when those names become known to the Plaintiff.

7.      This Court has original and supplemental jurisdiction over this matter, which involves federal and state causes of action.

8.      Venue is proper in that the events and injuries giving rise to the claims contained herein occurred or accrued entirely within Pearl River County, Mississippi, located in the

Southern Division.

## REQUEST FOR JURY TRIAL

9.      A jury trial is hereby specifically requested.  Fed. R. Civ. P. 38(b).

## FACTUAL ALLEGATIONS

10.     In approximately 2007, Shane Nelson purchased a new Suzuki Firenza automobile, VIN #KL5JK56Z27K701817, from a dealership in D'Iberville, Mississippi.

11.     The dealership sought and found financing for the Plaintiff.

12.     On information and belief, the car loan was placed with, or assumed by, Drive Financial, a subsidiary or sister company with Santander.

13.     At some point, Plaintiff was instructed to make auto loan payments directly to Santander.

14.     Plaintiff's Santander account number ended in the numbers -0830.

15.     Typically, Plaintiff learned the amount due on his loan by calling Santander and getting payment instructions from the Defendant's representatives.

16.     At various times, Santander or its agents used an automatic telephone dialing system or an artificial or prerecorded voice to make phone calls to Plaintiff's cellular telephone.  On these calls, Santander or its agents caused recorded messages to be left on Plaintiff's voicemail, often late at night, instructing the Plaintiff to call Santander during business hours to discuss matters relevant to his loan.

17.     Plaintiff never gave Santander permission to dial his cellular telephone.

18.     In late fall, 2011, Plaintiff made the following payments, in amounts provided to him by Santander:

| DATE | PAYMENT |
|------|---------|
| 09/02/11 | $366.04 (plus $10.95 processing charge) |
| 11/08/11 | $500.00 (plus $10.95 processing charge) |
| 12/22/11 | $466.57 (plus $10.95 processing charge) |

19. Each of these payments was made directly to Santander through Plaintiff's bank account at Navigator Credit Union in Pascagoula, Mississippi.

20. On information and belief, Santander failed to credit these payments to the Plaintiff's loan account.

21. Inexplicably, Santander credited the Plaintiff's last two payments – $500.00 and $466.57 – to the account of another loan customer who happened to be the Plaintiff's brother-in-law, Michael Kilpatrick.

22. According to Kilpatrick's Santander account records, copies of which are in the possession of Plaintiff and undersigned counsel, payments in the amounts of $500.00 on 11/08/11; and $466.57 on 12/22/11, were credited to Kilpatrick.

23. Kilpatrick did not make payments in those amounts on those days to Santander.

24. On or about Jan. 1, 2012, a tow-truck operator employed by Defendant, Renovo, came to the Plaintiff's home in Pearl River County, Mississippi, at the behest of Santander, with the express purpose of collecting money on the loan or repossessing the Suzuki Firenza.

25. Plaintiff's wife, who was at home, confronted the Renovo employee/agent and told him that the auto loan was current.

26. The Plaintiff's wife also instructed the Renovo employee not to take the automobile.

27. The Renovo agent told the Plaintiff's wife that she or the Plaintiff needed to address their

concerns directly with Santander.

28.    The Renovo agent repossessed the vehicle, despite instructions not to do so.

29.    Immediately after the repossession, the Plaintiff called Santander to determine what was

       going on.  He was informed by Santander's account representatives that he owed

       approximately $1,300.00 in past-due payments, and that he could only get the car back by

       paying that amount.

30.    The amount quoted by the representative apparently was based on the total of the three

       payments Plaintiff had already made in September, November and December.

31.    Plaintiff explained that he had made the payments, and gave the representative details

       about amounts/dates.  The representative disputed the information.

32.    On Jan. 3, 2012, Plaintiff faxed copies of his bank statements to Santander to provide

       evidence of payments, and called again to insist that Santander had made a mistake.

33.    Undersigned counsel was retained by Plaintiff.

34.    On Jan. 9, 2012, undersigned counsel sent letters to Santander and Renovo (via its

       parent/affiliate, Renaissance Recovery Group, LLC), demanding the return of the vehicle.

35.    Counsel did not receive a response from either Defendant.

36.    On or about Jan. 10, 2012, undersigned counsel called and spoke to a representative of

       Renaissance Recovery Group, LLC, the parent/affiliate of Renovo.  The representative

       acknowledged receipt of counsel's letter, and verified that a repossession had occurred.

       However, the Renaissance representative referred questions to Santander.

37.    On or about Jan. 10, 2012, undersigned counsel called and spoke to a representative of

       Santander.  The representative verified receipt of the letter sent by counsel, but disputed

having knowledge that the Plaintiff had made the payments or previously provided the

bank account statements as evidence.  The representative requested that evidence of

payments be sent to Santander.

38.     On or about Jan. 11, 2012, the Plaintiff received a letter from Santander stating that the

company intended to sell the repossessed automobile on or after Jan. 12, 2012, unless the

Plaintiff got his loan current.

39.     On Jan. 11, 2012, undersigned counsel sent a second set of letters to Santander and

Renaissance, attaching the Plaintiff's bank statements and facsimile confirmation sheets

to prove that the Plaintiff had faxed the statements on January 3.

40.     Counsel did not receive a response from either Defendant.

41.     On Jan. 17, 2012, a staff member for undersigned counsel called Santander, and a

Santander representative requested that the Plaintiff's debit card number be provided to

Santander so that it could verify that the payments had been made.  The Plaintiff agreed,

and counsel's staff called Santander and gave the company the Plaintiff's debit card

number.

42.     On Jan. 17, 2012, undersigned counsel sent a third letter to Santander and Renaissance,

reiterating concerns about the Defendants' actions, and noting that bank statements and

the debit card had been provided.

43.     Counsel did not receive a response from either Defendant.

44.     On Jan. 18, 2012, a staff member for undersigned counsel called Santander but was told

that no new information was available.

45.     On Jan. 19, 2012, a staff member for undersigned counsel called Santander and was told

that the Plaintiff's car had been sold at auction on Jan. 18, 2012.

## COUNT I: BREACH OF CONTRACT; BAD FAITH BREACH OF CONTRACT

46.    The Plaintiff reasserts and reiterates the facts and allegations contained in preceding

paragraphs as if fully restated in this paragraph.

47.    Every contract in Mississippi contains a covenant of good faith and fair dealing, the

breach of which is bad faith.

48.    Plaintiff entered a contractual agreement with Santander or its predecessor, the terms of

which required all parties to act in good faith.

49.    Plaintiff made loan payments as required by the contract.

50.    Santander wholly failed to acknowledge the payments, and in fact refused to recognize

the payments even when it was provided proof.  Santander misapplied and misused the

Plaintiff's money, and then accused the Plaintiff of breaching the contract.

51.    Santander hired a debt collector/towing company to find the Plaintiff and to either collect

on the loan or repossess the vehicle.

52.    Between January 1 and January 18, the Plaintiff or his attorneys contacted Santander and

its agents a minimum of ten (10) times, in writing or by telephone, to advise the

Defendants of their errors.  Defendants ignored all of the warnings, and continued their

efforts to deprive the Plaintiff of his money and property.

53.    All of these actions by the Defendants constituted breach of contract.

54.    The egregious nature of the behavior, both before and after being put on notice of their

mistakes, reveals the bad faith with which the Defendants governed themselves in their

dealings with the Plaintiff.

55.   The Defendants committed bad faith breach of contract, for which the Plaintiff demands to be awarded damages, punitive damages, interest, costs and attorney fees.

## COUNT II: WRONGFUL REPOSSESSION; BREACH OF PEACE

56.   The Plaintiff reasserts and reiterates the facts and allegations contained in preceding paragraphs as if fully restated in this paragraph.

57.   At the pertinent times, Plaintiff was not in default of his automobile loan.

58.   Nonetheless, Defendants acted to repossess secured collateral via methods available only if the underlying agreement was in default.

59.   Even if the loan had been in default, Defendants also were bound by law not to breach the peace when attempting to repossess secured collateral.

60.   When Plaintiff's wife realized that the vehicle was to be repossessed, she objected and instructed the agent not to take the vehicle.  At that point, under Mississippi law, the agent was on notice to back away and seek judicial process before respossessing the vehicle.

61.   However, the agent took the vehicle anyway, which was a breach of the peace.

62.   The Plaintiff was harmed, for which the Plaintiff demands to be awarded damages, punitive damages, interest, costs and attorney fees.

## COUNT III: TORTS

## (INVASION OF PRIVACY/TRESPASSING/CONVERSION)

63.   The Plaintiff reasserts and reiterates the facts and allegations contained in preceding paragraphs as if fully restated in this paragraph.

64.   **Invasion of privacy/trespassing:**

    a.    The Plaintiff's privacy was invaded as follows:

        i.    By sending a repo man to the Plaintiff's house, Defendants were telling the world that Plaintiff was a deadbeat who did not pay his loan.  That was false, and harmful.  Likewise, if any negative information about the Plaintiff was provided to any credit-reporting agency, the harm was compounded, and such report would constitute defamation.

        ii.    By coming onto Plaintiff's property and taking his automobile without proper cause, and without permission, Defendants were intruding on the Plaintiff's protected seclusion and privacy, and also were trespassing.

        iii.    By posting Plaintiff's payment information on another person's account, Defendants publicized private information that was not the business of anyone other than Plaintiff and his creditor.

65.   **Conversion:**

    a.    By taking, holding and selling the Plaintiff's automobile, the Defendants committed the tort of conversion:

        i.    Defendants wrongfully repossessed Plaintiff's automobile, even after they were told not to do so.

        ii.    After repossession, the Defendants continued to exercise dominion and control over the Plaintiff's vehicle in direct defiance of the Plaintiff's ownership rights.

        iii.    Plaintiff and his attorneys informed Defendants of their errors, demanded

that the vehicle be returned, and yet Defendants sold the vehicle.

66.     These tortious acts constituted invasion of privacy, trespass, and conversion.  For these injuries, the Plaintiff demands to be awarded damages, punitive damages, interest, costs and attorney fees.

**COUNT IV: VIOLATION OF TELEPHONE CONSUMER PROTECTION ACT**

67.     The Plaintiff reasserts and reiterates the facts and allegations contained in preceding paragraphs as if fully restated in this paragraph.

68.     The Telephone Consumer Protection Act,  47 U.S.C. §227, restricts the use of automated telephone equipment as described in the Act.  For example, the Act makes it unlawful for any person to make any call to a cellular telephone number, using any automatic telephone dialing system or artificial or prerecorded voice, unless given prior express consent to do so.  47 U.S.C. §227(b)(1)(A)(ii).

69.     Violations of the Act give a Plaintiff a private right of action, in which the Defendant may be held liable for $500.00 per violation, or actual losses, whichever is greater.  47 U.S.C. §227(b)(3)(B).  Intentional violations may increase damages to $1,500.00, or treble actual losses, per violation.  47 U.S.C. §227(b)(3).

70.     In the instant case, Santander or its agents have called Plaintiff on his cellular telephone, using automated equipment, and without Plaintiff's express permission to do so.  As such, Santander is in *per se* violation of the Act.

71.     These violations were intentional, and repetitive.

72.     Plaintiff demands a judgment in the amount of $1,500.00 per violation, or treble actual losses, whichever is greater, plus interest, costs and attorney fees.

## COUNT V: VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT

73.     The Plaintiff reasserts and reiterates the facts and allegations contained in preceding

paragraphs as if fully restated in this paragraph.

74.     The foregoing acts and omissions by the Defendants constitute violations of the Fair Debt

Collection Practices Act, which include, but are not limited to, the following:

   a.      The Defendants violated 15 U.S.C. § 1692f(1) by collecting or attempting to

collect amounts not permitted by law and by otherwise using unfair and

unconscionable methods;

   b.      The Defendants violated 15 U.S.C. Section 1692c(a)(2) in contacting the Plaintiff

when the Defendants knew the debtor was represented by an attorney; and

   c.      The Defendants violated the FDCPA by engaging in conduct the natural

consequences of which is to harass, oppress, or abuse any person in connection

with the collection of a debt, 15 U.S.C. Section 1692d.

75.     The Plaintiff is therefore entitled to an award of statutory damages and legal fees pursuant

to 15 U.S.C. § 1692k.  Plaintiff also demands interest, punitive damages and costs.

## COUNT VI: PUNITIVE DAMAGES

76.     The Plaintiff reasserts and reiterates the facts and allegations contained in preceding

paragraphs as if fully restated in this paragraph.

77.     Santander and its agents are serial bad actors on the national debt-collection and high-

interest auto finance scene.  For reference, Santander or its affiliates have been named as

defendants in well over 100 civil actions filed in federal districts courts across the country

in the past two (2) years alone.  The repeating pattern described in these lawsuits is abuse

of telephones, bully tactics with vulnerable debtors, and the use of repossession as a weapon to force debtors to pay large amounts of money, sometimes when there are serious questions whether the money is owed at all.

78.   Despite this rising reputation for abuse, Santander does not seem deterred.

79.   Even in a case, like this one, where it is clear that the company is wrong, Santander does not seem to be able to govern itself within the laws of this state and country.

80.   The company and its minions either have no regard for the law, or have no control over their abusive agents and affiliates.  Either way, this Court must not tolerate this behavior.

81.   The actions described in this Complaint – and which will be proven at trial – constitute more than just simple breach of contract, or simple negligence.  They rise to the level of gross negligence, reckless indifference, intentional misconduct or evil intent.

82.   Defendants' course of conduct makes this the type of extreme case in which punitive damages are appropriate.  Here, punitive damages should be awarded against the Defendants, and each of them, as an example and warning to these Defendants and others, that their behavior is unacceptable in society, and not to be tolerated.

83.   For these reasons, Plaintiffs request that punitive damages be awarded, along with interest, costs and attorney fees.

84.   Plaintiff also requests general relief.

**WHEREFORE,** the Plaintiffs having set forth their claims for relief against the Defendants respectfully pray of the Court as follows:

A.   That the Plaintiffs have and recover against the Defendants a sum to be determined by the Court in the form of actual damages;

B.     That the Plaintiffs have and recover against the Defendants a sum to be determined by the Court in the form of statutory damages;

C.     That the Plaintiffs have and recover against the Defendants a sum to be determined by the Court in the form of punitive damages;

D.     That the Plaintiffs have and recover against the Defendants all reasonable legal fees and expenses incurred by their attorney;

E.     That this Court order the Defendants to pay additional actual damages and statutory damages in a sum to be determined by the Court for violating the FDCPA pursuant to 15 U.S.C. Section 1692k;

F.     That this Court award pre- and post-judgment interest, plus all costs of the case; and

G.     That the Plaintiff have such other and further relief as the Court may deem just and proper.

Respectfully submitted;

SHANE NELSON, PLAINTIFF

BY:   **SHEEHAN & JOHNSON, PLLC**

R. HAYES JOHNSON, JR.

ATTORNEYS FOR PLAINTIFFS:
**SHEEHAN & JOHNSON, PLLC**
Patrick A. Sheehan, Esq. (MSB #6747)
R. Hayes Johnson, Esq. (MSB #10697)
2462 Pass Road
Biloxi, MS  39531
Telephone:  (228) 388-9316
Facsimile:  (228) 388-4433
rhayesj@aol.com
www.gulfcoastlawyer.com                    Page 13 of  13